**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant, Appellant,**

v.

**M. Elizabeth CLAUSON, Plaintiff, Appellee.**

No. 5872.

United States Court of Appeals First Circuit.

Heard Nov. 8, 1961.

Decided Nov. 21, 1961.

James D. St. Clair, Boston, Mass., with whom Earle C. Cooley and Hale & Dorr, Boston, Mass., were on brief, for appellant.

Julian L. Yesley, Boston, Mass., with whom Peabody, Koufman & Brewer, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

Effective July 1, 1957, Chrysler Motor Corporation contracted with defendant-appellant for a policy of group term life insurance upon the lives of its dealers. The plan was contributory and required election to participate. The amount of each dealer's insurance was to depend upon the classification in which from time to time he fell, which, in turn, was to be determined by a point formula based upon his volume of business. The dealer's annual contribution to the premium was based upon the current amount of his insurance.

 Plaintiff-appellee's husband, Clauson, was a Chrysler dealer. He was approached in 1957 by one Ingalls, a Chrysler representative, whose duties included obtaining dealers' applications to be insured under this policy.[1] Clauson

---

[1.] Defendant contends that Ingalls was Clauson's agent, citing Boseman v. Connecticut General Life Ins. Co., 1937, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036. Boseman stands at the most for the proposition that Ingalls was either Clauson's agent or Chrysler's. See 301 U.S. at 204–205, 57 S.Ct. at 686. In the case at bar defendant alleges that this is a Delaware contract. 18 Delaware Code

told Ingalls that he believed he was qualified on the basis of his 1956 business for Class 3, or $50,000 of insurance. Ingalls stated that he thought Clauson fell in Class 4, or $30,000. It was agreed that Chrysler's shipping records would be determinative. Clauson made written application for the larger coverage, with a list of Chrysler shipments which placed him in Class 3. Thereafter he received from defendant a certificate under the group policy for $50,000. He duly made the appropriate premium contributions.

Clauson died in May 1958, during the first policy year. It was then discovered that his 1956 volume was less than he had thought and that he had only enough points to qualify for $30,000. The defendant paid plaintiff, Clauson's designated beneficiary, $30,000, and she brought suit for the additional $20,000. The court, which tried the case without jury, found that Clauson had acted in good faith. Chrysler, however, had not examined its records, but had simply sent the application on to the defendant with an oral understanding as to later verification. The court decided in favor of the plaintiff in a careful opinion based upon estoppel. Clauson v. Prudential Ins. Co. of America, D.C.D.Mass., 1961, 195 F. Supp. 72.

Stated briefly, the defendant says that Clauson did not in fact qualify for $50,000 of life insurance, and therefore that the plaintiff is entitled only to the lower amount. It says that the policy provides for a determination, "as of" the policy anniversary date, of the classification of each insured, and argues that this could be done at any time. Plaintiff replies that the certificate indicated that this had already been done, that the policy provided that Chrysler's determination shall be "conclusive," and that there cannot be any revision. To this defendant says

that the mechanical problems involved in writing this insurance for a large number of dealers the first policy year were so great that defendant and Chrysler orally agreed that the certificates would be issued the first year on the basis of each insured's own statement of his classification without verification, and that in the case of claims maturing during that year Chrysler's records would be checked and payments made accordingly.

██ It is admitted that no notice of this arrangement was communicated to the individuals insured. On the contrary, they were led to understand, not only by the delivery, but by the express language of their certificates, that the determination of their classification and amount of insurance had already been made. Clauson's certificate provided, after stating that the "Effective Date" was "07/01/57," "Amount of Insurance: $50000. (as of the Effective Date of this Certificate)." It continued, in a new paragraph, "The Owner's amount of life insurance is at all times determined by the provisions of the Group Policy. The amount of insurance indicated above is that applicable to the Owner under the Group Policy on the effective date of this Certificate, and such amount is subject to increase and decrease in accordance with the provisions of the Group Policy." We read this language as relating solely to subsequent policy years. Paragraph 4(b) (ii) of the master policy commenced as follows, "As of July 1, 1958 and as of each July 1 thereafter, the Policyholder [Chrysler] shall determine each Dealership's Total Insurance Credit Points for the immediately preceding calendar year. * * *" There were certain stated consequences of such determination. There were no provisions, however, for any change in the amount of insurance stated with respect to July 1, 1957.

§ 911(4) (1953) states that an insurance policy cannot provide "that the agent soliciting the insurance is the agent of the person insured under the policy." Ingalls was not Clauson's agent. Wing v. John Hancock Mutual Life Ins. Co., 1943, 314 Mass. 269, 49 N.E.2d 905, is distinguisha-

ble. At the same time it is immaterial whether Ingalls was Chrysler's agent or the defendant's, because the defendant had full knowledge of the essential circumstances leading to the issuance of Clauson's certificate hereinafter discussed.

We are not clear whether the defendant concedes, but if it does not, on this record it must, that its position can be justified only by treating the oral arrangement between Chrysler and Prudential as to revision in the case of first-year claims as an amendment of the policy. The policy provides that no amendment can be made except in writing, signed by certain stated officers. The defendant contends that this provision was for the protection of itself and Chrysler, and could be waived. However, we think this oral amendment would result in a violation of the insurance laws of Delaware. It is there provided, as in many states, see, e. g., Mass.Gen.Laws Ann. ch. 175, §§ 132, 134 (1958), that no policy of life insurance shall be issued until the form has been filed with the insurance commissioner and he has had an opportunity to disapprove it. 18 Del.Code § 912 (1953). It may be presumed that this policy form was filed. We cannot assume the same with respect to the purported oral modification. Nor will we assume that an insurance commissioner, mindful of the interests of individual insureds fully as much as he must be of insurers, would approve an amendment under which coverage paid for and apparently unconditionally promised might be substantially decreased after the death of the insured by examination of records open to the insurer at the time it issued the certificate.

[5] It is not necessary, however, to rely upon this application of the insurance statute. The policy provides that the certificate "shall state the essential features of the insurance to which the owner is entitled." As a matter of ordinary contractual principles it seems obvious to us that whatever may be done under the master policy where the certificate is silent, positive statements made in the certificate are not to be revised without notice. The defendant points to the fact that the certificate states, "All benefits are subject in every respect to the Group Policy, which alone constitutes the agreement under which payments are made." This reservation cannot permit an insurer to play "Now you see it, now you don't," by an undisclosed provision in the group policy contradicting a specific statement in the certificate. Prudential Ins. Co. of America v. Parks, 6 Cir., 1952, 195 F.2d 302, adopting the opinion of the district court in Parks v. Prudential Ins. Co. of America, D.C.E.D.Tenn., 1951, 103 F.Supp. 493; Riske v. National Casualty Co., 1954, 268 Wis. 199, 67 N.W.2d 385.

We are opposed to the oral understanding between the defendant and Chrysler in still another respect. As previously stated, a check of Chrysler's records to determine a dealer's actual 1956 business, and hence the number of points for the year 1957, was to be made as to claimants who died during the first policy year. However, no verification was to be made as to those who did not die during that year. Accordingly, if there had been no claim with respect to Clauson his premium would have been retained on the $50,000 basis stated in the certificate, but if his claim did mature the records would be verified to see whether Ingalls' original information was correct. If so, his coverage would be reduced. It seems elementary that an insurer cannot plan to reduce the coverage and refund the premium if a loss occurs, while at the same time plan to retain the premium in full if it does not.[2]

Defendant must respond to the stated terms of its certificate.

Judgment will be entered affirming the judgment of the District Court.

---

2. In fairness to the company, the oral understanding was also that in case of dealers dying during the first year who had understated their classification the defendant would pay them the larger amount of insurance to which they would have been entitled. But such arrangement was of no possible benefit to Clauson, either payment-wise or premium-wise. Even if conceivably fair to the dealers considered as a whole, which we need not decide, it was quite a different arrangement from that to which Clauson understood he was subscribing, and one that we may readily assume would not have had his approval.