Frances KRAUSS, Plaintiff-Appellant,

v.

MANHATTAN LIFE INSURANCE COMPANY OF NEW YORK, Defendant-Appellee.

No. 436, Docket 82–7333.

United States Court of Appeals, Second Circuit.

Argued Nov. 15, 1982.

Decided Feb. 15, 1983.

---

* Leonard P. Moore died on December 7, 1982. He participated in the oral argument in this case and voted to dispose of the case in the manner set forth in this opinion, although he was unable to concur in the opinion itself.

Ambrose M. Richardson, New York City (Gray & Richardson, New York City, of counsel), for plaintiff-appellant.

Joseph Clark, New York City (James P. Donovan, Wilson, Elser, Edelman & Dicker, New York City, of counsel), for defendant-appellee.

Before VAN GRAAFEILAND, MESKILL and PRATT, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Cannella, J., dismissing a complaint seeking the unpaid balance of the death benefit allegedly due under a group life insurance policy.[1] In an earlier opinion, *Krauss v. Manhattan Life Insurance Co.,* 643 F.2d 98 (2d Cir.1981) (*Krauss I*), we held that the law of Illinois rather than New York governed the issue of whether the insurer, Manhattan Life Insurance Company of New York (Manhattan Life), could raise as a defense the insured's alleged ineligibility for coverage. We refer the reader to that opinion for a more complete description of the facts than we will recite here.

Hyman J. Krauss, an attorney, was employed as a part-time officer of Lettercraft, Inc. (Lettercraft), a Chicago-based printing company. Lettercraft was a member of a trust fund which provides a plan for group life insurance to the employees of its members. In December of 1960, Manhattan Life issued and delivered the master policy for this plan to the trust fund at its principal place of business in Buffalo, New York.

The master policy provided a maximum coverage of $25,000 for part-time employees, including officers, but this limitation was never brought to the attention of Krauss. Neither on the application forms that Hyman Krauss filled out nor at any time prior to his death did Manhattan Life

---

1. Appellant also challenges the denial of her motion to amend the complaint to conform to the evidence adduced at trial. In view of our disposition of the appeal, we need not address this issue.

ever inquire as to Krauss' part-time or full-time status. Rather, Manhattan Life issued a certificate of insurance to Krauss, effective September 14, 1966, documenting his $50,000 coverage of term life insurance which was subsequently increased to $100,000 on December 18, 1967. Lettercraft paid Krauss' insurance premiums based on the $100,000 coverage.

Krauss died on April 18, 1977. On May 18, 1977, his widow, appellant Frances Krauss, applied for payment of $100,000, plus interest. Manhattan Life paid her $25,000, plus interest, which it stated was the maximum coverage under the policy for part-time employees. This suit followed.

After our earlier remand for consideration of this case under Illinois law, the district court dismissed the complaint saying that Mrs. Krauss "has not sustained her burden of proving that Krauss was in fact eligible for $100,000 of life insurance." The district court explained:

> Under Illinois law, once defendant challenged the amount of insurance to which Krauss was entitled, plaintiff has the burden of proving his eligibility for the amount of insurance claimed. *See Crawford v. Equitable Life Assurance Society,* 56 Ill.2d 41, 47, 305 N.E.2d 144, 150 (1973). The Master Policy provides that Krauss's eligibility for a specific amount of insurance is determined solely by the provisions, terms and conditions of the Master Policy and not by the certificate of insurance or by the amount of premiums Lettercraft paid to defendant. Moreover, the Master Policy clearly states: "Part Time Individuals shall be eligible for $25,000 of Group Life Insurance upon submission of satisfactory evidence of insurability to the Insurance Company." Because part-time officers are by definition part-time individuals for the purposes of the Master Policy, Krauss was only entitled to $25,000 of life insurance unless an endorsement to the Master Policy specifically provided otherwise.

*Krauss v. Manhattan Life Insurance Co.,* No. 78 Civ. 5714, slip op. 1, 5 (S.D.N.Y. Mar. 23, 1982), *reprinted in* J.App. at 75, 79 (foot-notes omitted). The court then reviewed the endorsements and concluded that they did not help the appellant's case.

The district court may have read more into *Krauss I* than we intended. In that decision, applying *Crawford v. Equitable Life Assurance Society,* 56 Ill.2d 41, 305 N.E.2d 144 (1973), we held that the master policy's incontestability clause does not bar the insurer from raising ineligibility as a special defense. We did not mean to imply, however, that such a defense would necessarily carry the day. In *Crawford,* the Supreme Court of Illinois ruled that the insurer could *raise* the ineligibility defense. This left undecided the merits of that defense as well as other issues urged in the lower court, including waiver and estoppel. The Illinois Supreme Court remanded the action for further consideration. Similarly, we remanded *Krauss I* for consideration of the action under Illinois law, and the district court sustained the insurer's defense. We now reverse, concluding that the insurer's defense is barred by the insured's claim of estoppel.

■ We hold that Manhattan Life, by failing to inquire about Krauss' part-time status on its application forms or at any time prior to his death, by issuing certificates of insurance of $50,000 later amended to $100,000, and by accepting premium payments based on $100,000 life insurance coverage, is estopped from relying on the master policy provisions limiting the coverage to $25,000.

## DISCUSSION

■ The Illinois courts often rely on the doctrine of "equitable estoppel" as the basis for enforcing the performance of insurance contracts. *See Salloum Foods & Liquor, Inc. v. Parliament Insurance Co.,* 69 Ill. App.3d 422, 427–29, 26 Ill.Dec. 399, 403–404, 388 N.E.2d 23, 27–28 (1979) (discussion of Illinois courts' treatment of waiver and estoppel). "Equitable estoppel ... generally is based upon an insurance carrier's *conduct and/or representations which mislead an insured to his detriment.*" *Id.* at 429, 26 Ill.Dec. at 404, 388 N.E.2d at 28 (emphasis

added); *see DeGraw v. State Security Insurance Co.*, 40 Ill.App.3d 26, 34, 351 N.E.2d 302, 309 (1976).

In 1966, Manhattan Life furnished Krauss with its printed application form. He denoted his occupation as "Secretary-Treasurer." In completing the form, Lettercraft requested $50,000 life insurance coverage. J.App. at 20. In 1967, in Krauss' application for an additional $50,000 coverage, he listed his occupation as "Vice-Pres. Business Executive, Corp. Atty." J.App. at 16. Although one would expect the insurer to fashion the questionnaire to reflect its special concerns, the form contained no questions about Krauss' full-time or part-time status, his working hours, or his specific responsibilities. Manhattan Life accepted Krauss' application for $50,000 and later $100,000 of insurance coverage and sent him certificates which documented this coverage.

The master policy expressly provided that the insurer would issue certificates to represent "the insurance to which such Individual *is entitled* under this Policy." J.App. at 32 (emphasis added). Krauss was never expressly apprised of the terms of the master policy, which remained in Buffalo, New York, and received no indication that he would be subject to problems of ineligibility.

The premiums were paid by Lettercraft as part of Krauss' compensation. We cannot know whether Krauss would have sought and received a salary increase if either he or Lettercraft had known that the policy limited his coverage to $25,000. Neither can we know what steps Krauss would have taken to secure other insurance if he had been aware that his insurance coverage would be limited to $25,000. However, we need not speculate.

Krauss made no material misrepresentations in his applications.[2] Furthermore, he had every right to believe his insurance coverage to be as represented in the certificates furnished him by Manhattan Life. *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 527, 322 N.E.2d 454, 457 (1975). Krauss undoubtedly relied on the $100,000 coverage to meet some of his insurance needs. We therefore conclude, as a matter of law, that Krauss detrimentally relied on Manhattan Life's representations. *See Strom International, Ltd. v. Spar Warehouse and Distributors, Inc.*, 69 Ill.App.3d 696, 703, 26 Ill.Dec. 484, 489, 388 N.E.2d 108, 113 (1979) ("If there is no dispute in the material facts of a case and only one inference is possible, the question of whether the facts prove estoppel or waiver becomes a question of law. *Pantle v. Industrial Comm'n* (1975), 61 Ill.2d 365, 335 N.E.2d 491."); *see also* 1 J. Appleman, Insurance Law and Practice § 48 (1981).

The history of premium payments further supports our analysis. *See Glidden v. Farmers Automobile Insurance Association*, 57 Ill.2d 330, 336–37, 312 N.E.2d 247, 250 (1974) (intent of the parties is generally to provide indemnity in relation to the insured's premium payments). Here the master policy provided that premiums increase in accordance with each $1,000 of insurance coverage. J.App. at 33, 34. From 1967 until Krauss' death in 1977, Lettercraft paid the requisite sums for coverage reflected in the certificates. Consequently, Lettercraft paid four times as much as it would have paid had it intended to obtain $25,000 coverage. During this ten year span, Manhattan Life accepted these elevated payments without objection or inquiry. Although such delay in raising the issue of ineligibility does not, in and of itself, necessitate a finding of estoppel, it is an important "ele-

2. In a footnote to its opinion, the court made the following statement:

The Court also determined, as a matter of law, that Krauss made no material misrepresentations in his application for insurance. The Court reached this conclusion because defendant had failed to show any facts or statements made by Krauss at the time he completed his application for insurance that (1) were made with the actual intent to deceive the insurer, or (2) materially affected either the acceptance of the risk or the hazard assumed by the insurer.

*Krauss v. Manhattan Life Insurance Co.*, No. 78 Civ. 5714, slip op. at 9 n. 1 (S.D.N.Y. Mar. 23, 1982), *reprinted in* J.App. at 83 n. 1.

ment in determining the reasonableness or fairness of the insurer's conduct towards the insured." *Vasilakis v. Safeway Insurance Co.*, 46 Ill.App.3d 369, 374, 5 Ill.Dec. 1, 4, 361 N.E.2d 1, 4 (1977). We believe that by remaining silent while receiving premiums, the insurer unreasonably misled the insured, and should be estopped from challenging the decedent's ineligibility for such coverage after his death. *See generally James v. Metropolitan Life Insurance Co.*, 331 Ill.App. 285, 290–94, 73 N.E.2d 140, 142–45 (1947).

In considering the issue of estoppel, the *Vasilakis* Court stated that "[one must show] facts as would make it unjust, inequitable, or unconscionable to allow the [policy] defense to be interposed." 46 Ill.App.3d at 374, 5 Ill.Dec. at 3, 361 N.E.2d at 3, *citing Kenilworth Insurance Co. v. McDougal*, 20 Ill.App.3d 615, 620, 313 N.E.2d 673, 678 (1974). In this case, the record shows that Krauss intended to obtain $100,000 coverage and the insurer acceded to his request. Now, ten years later and after his death, the insurer claims that it intended something else. We believe that it is neither just nor equitable to allow the insurer to make such representations of coverage and then ignore them on the basis of a conflicting provision in the master policy which was not previously brought to the attention of the insured.

In the appropriate words of the leading commentator on insurance, Professor Appleman:

[T]he individual certificate is the only instrument which the employee sees at any time, and that if the insurer chooses to draft and to issue these certificates in language selected by it, *then it cannot be heard to complain that such language does not express the intention of the parties. Under the general rules of personal insurance, the insurer's conduct would result in estoppel.*

1 J. Appleman, Insurance Law and Practice § 46, at 158 (1981) (footnotes omitted) (emphasis added). We conclude that Manhattan Life, based on its past conduct, is estopped from invoking the decedent's ineligibility to defeat the beneficiary's claim. Accordingly, we reverse and remand with instructions to the district court to enter judgment for the appellant in the amount of the balance of the unpaid insurance coverage as evidenced by the "Amendment To Certificate," plus interest.

VAN GRAAFEILAND, Circuit Judge, concurring:

Because Illinois appears firmly committed to the majority view that the scope of coverage of an insurance policy cannot be enlarged by waiver or estoppel,[1] this Court's opinion may not be without its critics. However, since my colleagues' holding is so eminently just, I am satisfied that, under the facts of this case, the Illinois courts would reach the same conclusion. Accordingly, I concur in the result.

Section 843(d) of the Illinois Annotated Statutes, which is patterned after the National Association of Insurance Commissioners Model Group Life Insurance Bills of 1917 and 1956, W. Meyer, *Life and Health Insurance Law* § 20:2 at 637, 872 app. B, 875 app. C (1972), provides that every group policy delivered in Illinois must contain a provision that "the company will issue to the employer ... for delivery to the employee ... whose life is insured under such policy, an individual certificate setting forth a statement as to the insurance protection to which he is entitled ...." Section 14 of appellee's policy incorporates such a provision.

Appellee's certificate, which stated that the decedent Hyman Krauss was insured for $100,000, "subject to the terms and conditions of the Group Policy", paid only lip service to this statute. A statute should be interpreted in such a manner as to give it meaning, *Rosado v. Wyman*, 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442

1. *Commonwealth Insurance Co. v. O. Henry Tent & Awning Co.*, 287 F.2d 316, 319 (7th Cir.), *cert. denied*, 368 U.S. 826, 82 S.Ct. 45, 7 L.Ed.2d 30 (1961); *Simmons v. Continental Casualty Co.*, 285 F.Supp. 997, 1004 (D.Neb. 1968), *aff'd*, 410 F.2d 881 (8th Cir.1969); *Spence v. Washington National Insurance Co.*, 320 Ill.App. 149, 50 N.E.2d 128 (1943).

(1970); an interpretation which emasculates it should be avoided if possible, *Marsano v. Laird,* 412 F.2d 65, 70 (2d Cir.1969). Section 843(d) has meaning and purpose only if the amount of insurance coverage is set forth fully and accurately in the certificate. The $100,000 figure contained in appellee's certificate was not just uninformative and without significance, it was in fact deceptive. "We perceive no persuasion in respondent's proposal that the certificate may misrepresent the insurance protection without redress so long as it refers the holder to the master policy." *Bauer v. Insurance Co. of North America,* 351 F.Supp. 873, 875 (E.D. Wis.1972) (quoting *Riske v. National Casualty Co.,* 268 Wis. 199, 207, 67 N.W.2d 385 (1954)). *See also Prudential Insurance Co. v. Clauson,* 296 F.2d 76, 79 (1st Cir.1961).

If the $100,000 figure in appellee's certificate did not correctly set forth the insurance protection to which Krauss was entitled, it at least described the outer limits of such coverage. Under the terms of the policy, decedent's employer paid premiums on $100,000, the amount of life insurance which the policy itself said was "in force". Application of the doctrines of waiver and estoppel will not enlarge the scope of this coverage; it will simply prevent the amount of insurance "in force" from being reduced by post-claim underwriting adjustments.