PEDLER, APPELLANT, *v.* AETNA LIFE INSURANCE CO., APPELLEE.

[Cite as Pedler·*v.* Aetna Life Ins. Co. (1986), 23 Ohio St. 3d 7.]

(No. 85-989—Decided March 26, 1986.)

8

*Brouse & McDowell* and *Oscar A. Hunsicker, Jr.,* for appellant.

*Roderick, Myers & Linton, Robert F. Orth* and *Deborah L. Cook,* for appellee.

DOUGLAS, J.   This case involves the applicability of principles of equitable estoppel. The sole issue before this court is whether an insurer may enforce the limitation on eligibility for coverage clearly stated in its master policy and in literature distributed to the insured despite the acceptance of premium payments and the issuance of a certificate specifying greater coverage. We answer in the affirmative and, in so doing, hold that an insurer is estopped from denying the full value of coverage stated on the insurance certificate, based upon limitations or exclusions contained in the master policy, where the insured bargained and paid for such coverage, unless the insured knew or should have known of his ineligibility.

The court of appeals, in ruling in favor of the appellee, relied upon the reasoning of this court in *Talley* v. *Teamsters Local No. 377* (1976), 48 Ohio St. 2d 142 [2 O.O.3d 297], that where group insurance is provided:

"It is generally held that the certificate of coverage [issued to the insured] merely evidences * * * [that] employee-member's right to participate in the insurance provided under the terms and conditions imposed in the group policy. Consequently, the provisions of the group policy are controlling over the provisions of the certificate, and the rights of the parties in a group insurance enterprise are dependent upon the group contract." *Id.* at 144.

Appellant argues, however, that for two reasons, *Talley, supra,* should not control the decision in this case. First, appellant contends that *Talley* is readily distinguishable on its facts. In *Talley,* the group insurance was paid for entirely by the insured's employer. A certificate of insurance was mailed to the insured which reflected an amount of coverage in excess of that amount paid for by the employer. After his death, the insured's beneficiary sought to collect the insurance benefit outlined on the insurance certificate and the trial court ruled in her favor. The appellate court reversed. Relying upon the American Law Institute's statement of the law of promissory estoppel,[2] that court reasoned that since neither the insured nor the employer bargained or paid for this increased amount, promissory estoppel would not lie in the absence of any discernible action or forbearance in reliance upon the coverage "promised" by the certificate. In the case now before us, Pedler bargained and paid for the insurance evidenced by the certificate and, therefore, appellant maintains,

---

[2] "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. * * *"

in reliance upon this coverage, Pedler made no alternative arrangements for additional coverage.

In her second argument, appellant directs this court's attention to the trend followed in recent cases cited at Annotation (1981 and Supp. 1985), 6 A.L.R. 4th 835, and others, which allegedly support her proposition that where the master policy of insurance contains limitations or exclusions not clearly stated on the face of the certificate of insurance, such limitations or exclusions should not be given effect based upon a theory of estoppel.[3] She urges that the "old rule," as set forth in *Talley,* be set aside.

We agree with appellant that the case *sub judice* is factually distinguishable from *Talley* in that Pedler bargained and paid for the supplemental coverage herein. However, we do not find *Talley* to be at odds with the underlying equitable policy considerations expressed by the courts in the remaining cases cited by appellant, although they too are factually dissimilar to the instant case. See *Kirkpatrick* v. *Boston Mut. Life Ins. Co.* (1985), 393 Mass. 640, 473 N.E. 2d 173; *Hale* v. *Life Ins. Co. of North America* (C.A. 6, 1984), 750 F. 2d 547; *Krauss* v. *Manhattan Life Ins. Co. of New York* (C.A. 2, 1983), 700 F. 2d 870.

*Kirkpatrick, Hale* and *Krauss* each involved situations where the insured had no knowledge of the limitations or exclusions in the master policy. The stipulations of the parties in this case make it clear that Pedler was provided with a plan summary, in addition to other material outlining his ineligibility. The failure of the appellee to specifically note the limitation on the face of the certificate is not sufficient, standing alone, to estop the denial of coverage where the insured had the means of acquiring knowledge of the limitation.

As stated in 42 Ohio Jurisprudence 3d (1983) 109-110, Estoppel and Waiver, Section 66:

---

[3] We note at the onset that the majority of cases appellant relies upon are inapposite:

*Davis* v. *Crown Life Ins. Co.* (C.A. 11, 1983), 696 F. 2d 1343. Although factually similar, the *Davis* court applied Florida common law which holds that conflicts between the master policy and the insurance certificate are to be construed to include, rather than to exclude, coverage.

*Bain* v. *Benefit Trust Life Ins. Co.* (1984), 123 Ill. App. 3d 1025, 79 Ill. Dec. 528, 463 N.E. 2d 1082. The court applied Illinois common law which holds that the insurance certificate is normally controlling where its provisions conflict with those of the master policy.

*Domke* v. *Farmers & Mechanics Savings Bank* (Minn. App. 1985), 363 N.W. 2d 898. The decision in this case rests upon Minnesota statutory law which requires that the insurance certificate set forth any applicable limitations.

*Kates* v. *St. Paul Fire & Marine Ins. Co.* (D. Mass. 1981), 509 F. Supp. 477. This case is not helpful in resolving the issue before us in that it involved the interpretation of the public policy underlying the Massachusetts coordination of benefits statute.

*Investor's National Life Ins. Co.* v. *Norsworthy* (1981), 160 Ga. App. 340, 287 S.E. 2d 66. The decision in this case rests upon Georgia statutory law which requires actual delivery of the insurance certificate to the insured. Denial of summary judgment was held proper where there were issues of fact surrounding the actual delivery of the certificate. We note, however, that Georgia common law provides that the provisions of the master policy control even where applicable limitations do not appear on the insurance certificate.

"* * * [I]t is essential to the application of the principles of equitable estoppel that the person claiming to have been influenced by the conduct or declarations of another party to his injury should have been destitute of knowledge of the facts, or at least * * * of any convenient and available means of acquiring such knowledge, for if he lacks such knowledge he is bound to exercise reasonable diligence to obtain it.

"Obviously, a party who acts with full knowledge of the truth has not been misled and cannot claim estoppel. Hence, *there can be no estoppel where the party claiming it is chargeable with knowledge of the facts, as where he either knows the facts or is in a position to know them* or the circumstances are such that he should have known them; or where the circumstances surrounding the transaction are sufficient to put a person of ordinary prudence on inquiry which would have disclosed the facts; * * *." (Emphasis added.)

Accordingly, and for the reasons set forth in this opinion, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES and WRIGHT, JJ., concur.

C. BROWN, J., dissents.

CLIFFORD F. BROWN, J., dissenting. Today the majority unfairly interprets an insurance policy strictly against the insured, and liberally in favor of the insurer; accordingly, I must dissent.

It is undisputed that by the terms of Aetna's master policy, James Pedler would not have been eligible for supplemental coverage until he had been employed by General Highway Express, Inc. for two years, and that he had been so employed for only a few months at the time he applied for supplemental coverage. Further, the parties stipulated that all employees received a booklet explaining available insurance coverage. That booklet contained a "plan summary" which, as the majority correctly notes, provided: "In order to be eligible for Supplemental Life you must have two full years of employment prior to December first of each year."

However, the first paragraph of the "plan summary" which Pedler presumably received also contained the following language pertinent to this appeal: "When you become covered, or when your benefits change, you will receive an *individual Certificate Insert* which will *indicate* the benefits for which you have *actually become covered* * * *." (Emphasis added.) Thus, by the terms of its own "plan summary," Aetna induced Pedler to rely on the accuracy of his individual certificate.

In *Talley* v. *Teamsters Local No. 377* (1976), 48 Ohio St. 2d 142 [2 O.O.3d 297], this court denied coverage, as erroneously stated upon an in-

dividual certificate, upon the basis that the insured had not and could not have bargained for the coverage stated thereon. Here, however, Pedler did so bargain for and personally pay for precisely the coverage that was expressed within his individual certificate, and Aetna does not deny receiving Pedler's payments for the supplemental coverage at issue. Thus, in my view, *Talley* has no application to the case at bar.

Rather, much like the insurer in *Carucci* v. *John Hancock Mut. Life Ins. Co.* (1968), 15 Ohio App. 2d 1 [44 O.O.2d 37], in the case at bar, Aetna issued Pedler's individual certificate as the result of the insurer's unilateral mistake of fact. The insurer designed its own application forms for supplemental life insurance coverage, and in doing so, failed to make any inquiry of the applicant as to his tenure of employment. The insurer's failure to inquire about the very fact upon which it now relies should estop the insurer from denying coverage in the amount evidenced by Pedler's certificate and for which Aetna accepted Pedler's premium payments. Just as in this court's decision in *Insurance Co.* v. *Williams* (1883), 39 Ohio St. 584, in my view, the insurance company in the case at bar is responsible for the mistake.

In addition, Aetna's failure to inquire as to the basic facts upon which it could determine (prior to issuing an individual certificate) an applicant's eligibility for supplemental life coverage takes this case out of the language of the disclaimer found in Section 3, Article VI of Aetna's master contract: "If any relevant facts pertaining to any individual to whom insurance relates shall be found to have been misstated, an equitable adjustment of premiums shall be made, and if such misstatement affects the existence or the amount of insurance, the true facts shall be used in determining whether insurance is in force under the terms of this policy and in what amount." Aetna has not alleged that Pedler "misstated" his tenure with his employer in any manner, as envisioned by that language; rather, Aetna simply failed to ask about a fact which it now claims "affects the existence * * * of insurance." Thus, the very condition which purports to allow Aetna to avoid its contractual obligation to Pedler was not met. Because we have often held that language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer, *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95 [69 O.O.2d 262], in this case, then, by the very terms of the master policy, Aetna should not be heard to deny coverage. Rather, the insurer should be required to suffer the consequences of its own omissions and mistakes.

The majority appears to ignore the fact that this case was decided on motions for summary judgment.[4] There was no evidence presented that

---

[4] Additionally, I note that the person who solicited Pedler's purchase of supplemental life insurance is characterized by the majority exclusively as an employee of General Highway Express, Inc. That characterization ignores an emerging trend to consider such insurance plan administrators, at a minimum, to be dual agents, acting both for the employer and for

Pedler had actual knowledge of the two-year tenure requirement at issue. And, given the conflicting contract terms and "plan summary" provisions, to charge Pedler with constructive knowledge of how this policy would be interpreted amounts to basic unfairness. Instead, in my view, Aetna should be required to pay the face amount evidenced by the certificate, in the absence of fraud.

Accordingly, I would reverse the judgment of the court of appeals.

─────────

the insurer who designs the solicitation system and benefits from it. Thus, as appellant suggests, on the facts of this case, the "solicitor" was not merely an employee of General Highway Express, Inc.; rather, the solicitor also acted as Aetna's agent, for Aetna's convenience. Because of that agency relationship, the agent's presumed knowledge of Pedler's short tenure should be imputed to the insurer. *Mass. Life Ins. Co.* v. *Eshelman* (1876), 30 Ohio St. 647.