WOLERY, Appellee and Cross–Appellant,

v.

CITY OF PORTSMOUTH, Appellant and Cross–Appellee.█

[Cite as *Wolery v. Portsmouth* (1990), 67 Ohio App.3d 16.]

Court of Appeals of Ohio,
Scioto County.

No. 1768.

Decided March 21, 1990.

*Mark Price*, for appellee and cross-appellant.

*Richard Schisler*, City Solicitor, for appellant and cross-appellee.

———————

HOMER E. ABELE, Presiding Judge.

This is an appeal from a Scioto County Common Pleas Court judgment awarding Wolery $40,000 for legal services rendered to the Portsmouth City Council in 1980 and 1981 during a controversy which culminated in *Schisler v. Clausing* (1981), 66 Ohio St.2d 345, 20 O.O.3d 316, 421 N.E.2d 1291.

Wolery filed his complaint in this action on November 20, 1981, in the Franklin County Common Pleas Court. He successfully defended himself in that court against the city's motion for change of venue by filing affidavits asserting he first agreed to represent the city council when three councilmen visited his home in Franklin County.

On January 31, 1983, the Franklin County Common Pleas Court held a trial on the matter and awarded Wolery the full $45,000 he requested in his complaint. The court rejected the city's defense that the city council failed to appropriate money and failed to satisfy the Portsmouth City Charter Section 57 requirement of obtaining an auditor's certificate encumbering funds to pay for the legal services. The court noted that while city council passed an ordinance on February 20, 1980, authorizing the legal services, from the very next day until the resolution of *Schisler, supra,* injunctions and stays in that case prohibited implementation of the ordinance. The court wrote in part:

" * * * It is this Court's opinion that by obtaining and pursuing the injunctive relief which the City of Portsmouth sought, for reasons entirely unclear from the record, they are estopped from asserting the provisions of Section 57 as a defense."

On December 13, 1984, the Franklin County Court of Appeals overruled the city's first, second, and fourth assignments of error which dealt with the city council's noncompliance with legislative requirements, the doctrine of estoppel, and the sufficiency of the evidence concerning the reasonable value of Wolery's services.

The Franklin County Court of Appeals, however, sustained the city's third assignment of error which concerned venue. The court determined that although Wolery first agreed to represent the city council when the three councilmen visited his home in Franklin County, the city council did not officially employ Wolery until passage of the February 20, 1980 ordinance, which happened in Scioto County.

The Franklin County Court of Appeals made the following comment on its App.R. 12(A) duty to rule on all the city's assignments of error:

"Although our sustaining of the third assignment of error may render our discussion of the other assignments of error *dicta,* this court is obliged to discuss and rule upon all assignments of error by App.R. 12(A), as we have done herein."

The court remanded the case to the Franklin County Common Pleas Court with instructions to sustain the city's motion for change of venue and transfer the case to the Scioto County Common Pleas Court.

Both parties moved for summary judgment after the September 4, 1985 transfer of the case to the Scioto County Common Pleas Court. Wolery argued the "law of the case" requires the Scioto County Common Pleas Court to follow the Franklin County Court of Appeals decision which found the city is estopped from claiming the lack of an appropriation and/or the lack of an auditor's certificate bars Wolery's recovery. The city, to the contrary, argued the "law of the case" and estoppel principles should not apply in this case.

On April 21, 1986, the court denied both motions for summary judgment. The court stated in part:

"Plaintiff, in his memorandum in support of his motion for summary judgment, implies that the prior holding by the Franklin County Court of Appeals is binding upon this court and is dispositive of the case. However, as the court remarks at page 3200 of the Opinion, the court of appeals ruling granting defendant's motion for change of venue may make the rest of the Opinion *dicta,* but the Appellate Court pursuant to Appellate Rule 12(A), must rule upon all assignments of error.

"This court rules that, upon reversal of Judge Tyack's judgment, and remand to the trial court, and upon Judge Williams' judgment entry of September 4, 1985 ordering a change of venue to Scioto County, the parties are in the same relative positions as if the case had been originated in Scioto County and kept there. There shall be a *trial de novo,* and the court shall not be bound by past holdings by Judge Tyack concerning either law or fact, nor shall similar holdings by the Franklin County Court of Appeals be binding, because such holdings were *dicta.*"

On November 24, 1986, and again on September 29, 1987, the parties stipulated the Scioto County Common Pleas Court should use the record of proceedings before the Franklin County Common Pleas Court as the record for findings of fact and conclusions of law to be made by the Scioto County Common Pleas Court. Accordingly, the Scioto County Common Pleas Court proceeded to consider the case without hearing any new evidence.

On July 18, 1988, the Scioto County Common Pleas Court issued findings of fact and conclusions of law which stated in part:

"18. The Court finds that the remanding of the sole issue of venue by an Appeals Court to a trial [*sic*] within its jurisdiction with orders to transfer the cause to a trial Court in another jurisdiction does require the cause to be tried in *trial de nova* [*sic*] upon the rationale to hold otherwise would cause the remand to be spurious and venue to be legally inconsequential.

" * * *

"20. The doctrine of the law of the case is not a mandatory requirement, nor does the spirit of the doctrine require mandatory application. * * *

" * * *

"40. The court further finds from the evidence that plaintiff did not maintain records of time spent, expenditures incurred, or expenses related to the providing of legal services.

"41. The statement for services does not include attorney's fees for a Mr. Fohey, who was hired by the plaintiff without consulting the client, City Council;

"42. The hours submitted were reconstructed by plaintiff after the proceedings had been concluded, some of the reconstruction being done after the statement was submitted;

"43. The record has no evidence relating the number of hours spent to specific work product such as: attendance at meetings, preparation and drafting of legal documents and briefs; Courtroom appearances."

Instead of awarding Wolery the full $45,000 he requested, the court awarded him $40,000. The city filed a notice of appeal and Wolery filed a notice of cross-appeal.

We reverse.

The city's Assignment of Error I

"The common pleas court erred in holding that a party may recover on a contract with a municipal corporation despite non-compliance with mandatory legislative requirements."

The city's Assignment of Error II

"The common pleas court erred in holding that the city of Portsmouth was estopped from asserting lack of compliance with legislative requirements as a defense."

■ In support of its first assignment of error, the city cites *Lathrop Co. v. Toledo* (1966), 5 Ohio St.2d 165, 172–173, 34 O.O.2d 278, 282, 214 N.E.2d 408, 413, where the court wrote:

"Many times this court has held that no recovery can be had on a contract that is entered into contrary to one or more of the legislated requirements. " * * *

"A thread running throughout the many cases the court has reviewed is that the contractor must ascertain whether the contract complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril. * * * "

The city notes the contract between Wolery and the city council does not comply with R.C. 5705.41(D), which prohibits municipal corporations from making any contract involving the expenditure of money without an auditor's certificate stating the money for the contract has been lawfully appropriated and is unencumbered. Section 57 of the Portsmouth City Charter similarly requires an auditor's certificate. Section 58 of the charter states that contracts made in violation of Section 57 are void. The city further notes the Scioto County Common Pleas Court and the Portsmouth Municipal Court relied upon the above rationale when rejecting complaints brought by two court reporting firms.

In support of its second assignment of error, the city cites cases which hold the doctrine of estoppel cannot be invoked against a municipal corporation. In *Schumacher Stone Co. v. Columbus Grove* (1944), 73 Ohio App. 557, 563, 29 O.O. 187, 190, 57 N.E.2d 251, 254, the court quoted and held as follows:

" 'It is well settled that the rule that there can be no estoppel where a municipality or other public body is wholly without power to make a contract applies to contracts made otherwise than as expressly provided and limited by statutes which confer the power to contract and prescribe the mode by which the municipality shall exercise that power. * * * ' * * * 16 Ohio Jurisprudence, 657, Estoppel, Section 77."

In response to these two assignments of error, Wolery cites the opinions of the Franklin County Common Pleas Court and Court of Appeals. Wolery argues the series of restraining orders which prevented city council from implementing the ordinance passed on February 20, 1980, prevented city council from appropriating money to pay for Wolery's services and prevented city council from obtaining an auditor's certificate. Wolery cited a portion of the Franklin County Common Pleas Court judgment as follows:

"This Court finds the position of the City of Portsmouth entirely untenable to on one hand have the attorney for the council sue the various councilmen and virtually contemporaneously therewith enjoin them from taking any steps to protect the interests of the City of Portsmouth as it relates to the actions of the council persons in their official capacity."

Wolery also cited *Youngstown v. First National Bank* (1922), 106 Ohio St. 563, 140 N.E. 176, where the court held, in effect, the requirement of an auditor's certificate did not apply in an emergency situation. The court noted a statute similar to R.C. 5705.41 and Section 57 of the Portsmouth City Charter is:

" * * * one of the most wholesome laws of a restrictive nature ever put upon the statute books, and its spirit and letter should be scrupulously respected and followed. *Clearly, however, it was designed to apply to the usual, ordinary, and everyday transactions between the public and the city, through its officers.*" (Emphasis added.)

The court held that due to an emergency situation in the city of Youngstown, the certification statute must yield to a statute concerning the emergency employment of patrolmen.

We believe that although court orders issued in *Schisler v. Clausing* (1981), 66 Ohio St.2d 345, 20 O.O.3d 316, 421 N.E.2d 1291, prevented city council from "implementing the ordinances passed on February 20, 1980," nothing prevented either city council or Wolery from asking the court in that case for an order permitting city council to pay Wolery or for an order permitting city council to obtain legal representation in some other manner. The cases cited by Wolery for the proposition that city council had a right to legal representation in *Schisler* should have been presented to the court in that case.

The city's first and second assignments of error are sustained.

The city's Assignment of Error III

"The common pleas court erred in finding that the plaintiff had met his burden of proof regarding the amount of his fee and that the fee was fair and reasonable."

In this assignment of error the city argues insufficient evidence exists in the record below to support the $40,000 judgment. As a reviewing court, we may not reweigh the evidence but must defer to the trier of fact where sufficient evidence exists in the record to support the judgment below. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Wolery testified he agreed to represent city council for an hourly fee of $100 plus expenses. He testified he worked approximately five hundred and eighty hours, but chose to give the city a flat bill for $45,000. Although Wolery didn't keep detailed records of the time he worked, he explained:

"I kept notations from time to time as to when I went to meetings, what we failed, what we did, and then I recapitulated that all into accounted time."

We find Wolery's testimony supports the trial court's judgment that $40,000 was a fair and reasonable fee. As we noted under the city's first and second assignments of error, however, the city council's noncompliance with mandatory legislative requirements bars Wolery from collecting any fee whatsoever.

The city's third assignment of error is overruled.

Wolery's Assignment of Error I

"The trial court mistakenly decided that it was not bound by the holdings found in *Wolery v. Portsmouth* (Dec. 13, 1984), Franklin App. No. 83AP–827, unreported [1984 WL 6034], with respect to the substantive issues of this case."

Although Wolery cites no authority exactly on point, he argues the Scioto County Common Pleas Court should be bound by the decision of the Franklin County Court of Appeals in the case at bar under the "law of the case" doctrine. We find no merit to Wolery's argument.

In *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 2–3, 462 N.E.2d 410, 412, the court made the following observations about the "law of the case" doctrine:

"Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. * * *

"The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. * * * However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. * * * " See, also, *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 160, 519 N.E.2d 390, 393, where the court quoted and followed *Nolan*.

In the case at bar, application of the doctrine in the manner suggested by Wolery would vitiate the concept of venue and would render meaningless the Franklin County Common Pleas Court's remand and transfer of the case to the Scioto County Common Pleas Court. To apply the doctrine would render an injustice by denying the city any remedy for the fact Wolery commenced the case in an incorrect venue.

Wolery's first assignment of error is overruled.

Wolery's Assignment of Error II

"The trial court misapprehended the law when it found that it lacked jurisdiction to consider John J. Wolery's motion for a new trial."

24

■ The court below issued final judgment in this case on July 18, 1988. On August 1, 1988, Wolery filed a motion for new trial. Eleven days later the city filed a notice of appeal. Wolery filed a notice of cross-appeal on August 19, 1988.

On November 28, 1988, the court issued the following judgment entry with respect to Wolery's motion for new trial:

"This cause came this day before the Court upon a Motion for a New Trial filed by the plaintiff. The motion comes before the Court upon evidence and the record, and stipulations of the parties. Upon the foregoing, the Court finds:

"1. The parties in a timely manner filed notices of appeals [*sic*] and counter notices of appeals [*sic*] to the Fourth District Court of Appeals;

"2. Upon the filing of the appeals, the Court has no further jurisdiction over the subject matter, including the subject matter of the plaintiff's motion for a new trial;

"3. Further, the Court finds there are no new issues or subject matter to be considered upon the Motion for New Trial; that all issues were considered by the trial court; the Court clearly set forth in the Entry, Finding [*sic*] of Fact and Conclusion [*sic*] of Law filed by the Court in the case in chief, the decision of the Court as to that which the plaintiff was entitled to recover and the rationale of the Court in making said finding and orders.

"Therefore, upon the finding of the Court that the Court presently lacks jurisdiction, and further, there are no new issues or evidence to which the plaintiff is entitled to a new trial, *the Court hereby orders the Motion for a New Trial is denied.*" (Emphasis added.)

First, we note the court initially said it has no jurisdiction to decide Wolery's motion for new trial, and then the court proceeded to decide and deny Wolery's motion for new trial. Second, we note the court did in fact have jurisdiction to decide the motion.

Since App.R. 4(A) provides that the filing of a motion for new trial stops the running of the appeal time, when Wolery filed his motion for new trial the appeal time stopped. Since the rule further provides that upon resolution of a motion for new trial the appeal time begins to run anew, the appeal time did not begin to run anew until the court's somewhat ambiguous November 28, 1988 judgment entry, *supra,* which denied the motion. The parties thus filed their notices of appeal prematurely. App.R. 4(A), however, provides that premature notices of appeal shall be treated as filed after the judgment entry.

The jurisdictional problem the court below referred to in its November 28, 1988 judgment entry and Wolery referred to in his brief on appeal only arises

in situations where a party files a motion for new trial after the filing of a notice of appeal. See *Starcher v. Satellite Reception Systems, Inc.* (May 5, 1987), Athens App. No. 1293, unreported, 1987 WL 4833; *Majnaric v. Majnaric* (1975), 46 Ohio App.2d 157, 75 O.O.2d 157, 347 N.E.2d 552; *State v. Rogers* (1985), 17 Ohio St.3d 174, 183–184, 17 OBR 414, 422–424, 478 N.E.2d 984, 993–994. But, see, *Dean v. Dean* (Oct. 29, 1985), Gallia App. No. 84 CA 19, unreported, 1985 WL 17490.

In summary, we agree the court misapprehended the law when it found it lacked jurisdiction to consider Wolery's motion for new trial. Since the court did, however, consider the motion, we find Wolery suffered no prejudice as a result. Accordingly, we find no merit to Wolery's second assignment of error.

Wolery's second assignment of error is overruled.

Wolery's Assignment of Error III

"The trial court should have awarded interest to John J. Wolery, at the statutory rate, from the time he submitted his bill to the city of Portsmouth."

Wolery cites R.C. 1343.03(A), which provides:

"In cases * * * when money becomes due and payable upon any * * * book account * * * upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract * * *, the creditor is entitled to interest at the rate of ten per cent per annum * * *."

Wolery also cites *Beifuss v. Westerville Bd. of Edn.* (1988), 37 Ohio St.3d 187, 189, 525 N.E.2d 20, 22, where the court noted interest can be assessed against a municipal corporation for delay in the payment of money.

We agree with Wolery that the court should have awarded him interest for any judgment he won from the city. Since, however, under the city's first and second assignments of error we decided Wolery cannot recover any judgment from the city, Wolery suffered no prejudice as a result of the fact the court failed to award him interest pursuant to R.C. 1343.03(A).

Wolery's third assignment of error is overruled.

*Judgment reversed.*

HARSHA, J., concurs.

STEPHENSON, J., dissents.

HARSHA, Judge, concurring.

I concur in the judgment and opinion reversing the judgment of the trial court and allowing appellee/cross-appellant's claim for attorney fees, but

would add the following. Appellant's first and second assignments of error assert that the trial court erred in holding that a party may recover on a contract with a municipal corporation despite noncompliance with mandatory legislative requirements, and that the trial court further erred in holding that appellant was estopped from asserting lack of compliance with legislative requirements as a defense.

Section 57 of the Portsmouth City Charter provided, at all times pertinent herein, as follows:

"*No contract*, agreement, or other obligation, involving the expenditure of money out of appropriations made by the Council, *shall be entered into*, nor shall any order for such expenditure be valid *unless the City Auditor shall first certify to the Council* that the money required for such contract, agreement or obligation is in the Treasury to the credit of the appropriation from which it is to be drawn, and that it is otherwise unencumbered. The certificate of the City Auditor shall be filed and made a matter of record in his office, and the sum so certified as being in the Treasury shall not thereafter be considered unencumbered until the City is discharged from the contract, agreement, or obligation." (Emphasis added.)

In the case at bar, a former city councilman, as well as appellee, testified that on February 17, 1980, a majority of Portsmouth City Council entered into a contract wherein appellee was to provide legal counsel to Portsmouth City Council at the rate of $100 per hour plus expenses. On February 20, 1980 at approximately 7:00 p.m., the Portsmouth City Council passed an ordinance which provided "[t]hat the Mayor and the members of the City Council of the City of Portsmouth, Ohio, engage special legal counsel to represent them in cases requiring legal counsel." On February 21, 1980 at 4:17 p.m., appellant secured an injunction prohibiting implementation of the aforementioned ordinance.

In *Pedler v. Aetna Life Ins. Co.* (1986), 23 Ohio St.3d 7, 23 OBR 6, 490 N.E.2d 605, the Supreme Court of Ohio held as follows with respect to the doctrine of equitable estoppel:

" * * * [I]t is essential to the application of the principles of equitable estoppel that the person claiming to have been influenced by the conduct or declarations of another party to his injury should have been destitute of knowledge of the facts, or at least * * * of any convenient and available means of acquiring such knowledge, for if he lacks such knowledge he is bound to exercise reasonable diligence to obtain it.

"Obviously, a party who acts with full knowledge of the truth has not been misled and cannot claim estoppel. Hence, *there can be no estoppel where the*

*party claiming it is chargeable with knowledge of the facts, as where he either knows the facts or is in a position to know them* or the circumstances are such that he should have known them; or where the circumstances surrounding the transaction are sufficient to put a person of ordinary prudence on inquiry which would have disclosed the facts * * *." (Emphasis *sic.*)

In the case at bar, Councilman Price admitted that he and the other council members knew or should have known of the requirements of Section 57 of the Portsmouth City Charter. Appellee indicated that he had reviewed the charter prior to the council meeting of February 20, 1980. Here, the cases relied upon by appellee and the Franklin County Court of Appeals are inapposite to the peculiar factual circumstances involved. See, *e.g., Youngstown v. First National Bank* (1922), 106 Ohio St. 563, 140 N.E. 176; *State, ex rel. Corrigan, v. Seminatore* (1981), 66 Ohio St.2d 459, 20 O.O.3d 388, 423 N.E.2d 105; and *Cahn v. Huntington* (1972), 29 N.Y.2d 451, 328 N.Y.S.2d 672, 278 N.E.2d 908. The "estoppel" relied upon by the several courts in this matter as well as the dissenting opinion herein emphasize that any action on the part of the city council members to obtain an auditor's certificate pursuant to Section 57 of the Portsmouth City Charter would have resulted in the council members acting in contempt of the February 21, 1980 injunction secured by the Portsmouth City Solicitor. However, the ordinance reflecting the February 17, 1980 contract for employment of attorney services to be provided by appellee was passed by the city council on February 20, 1980, when no injunction was in effect.

From the manifest language of Section 57 of the Portsmouth City Charter, no contract agreement could be entered into without "first" acquiring the auditor's certificate, *i.e.,* an auditor's certificate was required *PRIOR TO* the passage of the ordinance herein and prior to the agreement that appellee and Price claimed to have arisen on February 17, 1980. At each of these times, there was no injunction prohibiting appellee and the city council members from securing the certificate. Moreover, such members admittedly knew or should have known of this charter requirement. *Pedler, supra.* When there is an entire absence of authority to act originally, there can be no room for an estoppel to arise afterwards. *West v. Bentleyville* (1987), 42 Ohio App.3d 95, 536 N.E.2d 401; *Louisville & Nashville RR. Co. v. Cincinnati* (1907), 76 Ohio St. 481, 507, 81 N.E. 983, 989. Therefore, although any post-agreement "ratification" would have necessitated an auditor's certificate which was precluded by the February 21, 1980 injunction, in that the manifest language of the applicable ordinance required an auditor's certificate prior to the "entering into" of the agreement for employment of appellee and the ordi-

nance recognizing that agreement, there was a complete absence of authority on the part of city council to act originally and appellee's estoppel argument must fail. *West, supra; Louisville & Nashville RR. Co., supra.*

For the foregoing reasons, I concur in the reversal of the judgment of the trial court herein.

STEPHENSON, Judge, dissenting.

I respectfully dissent from the opinion of the court with respect to appellant's first and second assignments of error. I believe it would be inequitable to allow the city of Portsmouth to assert that the council failed to follow Section 57 of the charter. I agree with the well-reasoned opinions of the Franklin County Court of Common Pleas and Franklin County Court of Appeals concerning this issue. The court of appeals, citing the court of common pleas, stated, in part, the following:

" 'This Court finds the position of the City of Portsmouth entirely untenable to on one hand have the attorney for the council sue the various councilmen and virtually contemporaneously therewith enjoin them from taking any steps to protect the interests of the City of Portsmouth as it relates to the actions of the councilpersons in their official capacity. It is this Court's opinion that by obtaining and pursuing the injunctive relief which the City of Portsmouth sought, for reasons entirely unclear from the record, they are estopped from asserting the provisions of Section 57 as a defense. For the Council to have pursued the necessary procedural steps under Section 57 would have been a direct violation of the injunction.' " *Wolery v. Portsmouth* (Dec. 13, 1984), Franklin App. No. 83AP–827, unreported, 1984 WL 6034.

Therefore, I would affirm the judgment of the court below except that I would remand with an order to the court to award prejudgment interest.