NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0445n.06

No. 09-3180

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Jul 21, 2010**
LEONARD GREEN, Clerk

CLAUDIA UNGER,                                      )
                                                   )
    Plaintiff-Appellant,                           )
                                                   )
v.                                                 )  ON APPEAL FROM THE UNITED
                                                   )  STATES DISTRICT COURT FOR THE
CITY OF MENTOR; CHRISTOPHER                        )  NORTHERN DISTRICT OF OHIO
COOPERRIDER, Supervisor, Parks and                 )
Public Lands Division, City of Mentor; KURT        )
KRAUS, Parks and Public Lands Division,            )
City of Mentor,                                    )
                                                   )
    Defendants-Appellees.                          )

Before:  BOGGS, COOK, Circuit Judges, and COLLIER, District Judge.[*]

COOK, Circuit Judge.  Claudia Unger sued the City of Mentor and two employees of its

Parks and Public Lands Division, Christopher Cooperrider and Kurt Kraus (collectively

"Defendants"), alleging that they intentionally misclassified her as a seasonal employee to preclude

her membership in Laborers' Union Local 1099 (the union).  Specifically, Unger claims that

Defendants classified her as a seasonal employee, despite her work history (44 weeks per year for

6 years) and repeated reclassification requests, and ultimately dismissed her in retaliation for those

requests and for filing a state administrative action.  She alleges Defendants thereby: (1) deprived

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District
of Tennessee, sitting by designation.

her of her First Amendment rights and right to unionize under Ohio's public employees collective

bargaining law, giving rise to a claim under 42 U.S.C. § 1983; (2) wrongfully terminated her in

contravention of clear public policy as expressed in the National Labor Relations Act, the First

Amendment, and Ohio collective bargaining law; (3) breached her employment contract; and (4)

discriminated against her because of her sex, violating Ohio law and the Equal Pay Act, 29 U.S.C.

§ 206(d). Defendants moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing

that Unger's complaint failed to state any cognizable claim for relief. The district court dismissed

all of Unger's claims except it declined supplemental jurisdiction over her state-law sex

discrimination claim and dismissed it without prejudice. Unger now appeals.

Because Unger failed to state an actionable claim, we affirm.

## I. Standard of Review

This court reviews de novo a district court's decision to dismiss a complaint for failure to

state a claim under Rule 12(b)(6). *J & R Mktg., SEP v. Gen. Motors Corp.*, 549 F.3d 384, 389 (6th

Cir. 2008). In our review, "'we construe the complaint in the light most favorable to the plaintiff,

accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett

v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *DirecTV, Inc. v.

Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The complaint's factual allegations must "raise a right

to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and

"state a claim to relief that is plausible on its face," *id*. at 570.

This court reviews a district court's decision to decline supplemental jurisdiction over a state law claim for abuse of discretion. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1867 (2009).

## II. Analysis

*A.  § 1983 Claim*

Unger alleges that the defendants violated § 1983 by depriving her of her rights to peaceably assemble and collectively unionize under Ohio's Public Employees' Collective Bargaining Act, O.R.C. § 4117.01 *et seq*., and  the First Amendment.

As an initial matter, the portion of Unger's § 1983 that rests on Defendants' alleged violation of her rights under Ohio's public employees collective bargaining statute fails as a matter of law. Section 1983 protects against the "deprivation of a right secured by the Constitution or laws *of the United States . . . .*" *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (emphasis added) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  A state law, like Ohio's collective bargaining statute, cannot create a federal right, *Harrill v. Blount County*, 55 F.3d 1123, 1125 (6th Cir. 1995), and therefore cannot underlie Unger's § 1983 claim.

The remainder of Unger's § 1983 claim rests on Defendants' alleged First Amendment

violation. Although she broadly complains of all Defendants' misdeeds, she cites Cooperrider's conduct alone. Because she does not identify any misconduct by Kraus, she fails to state a claim against him. *Twombly*, 550 U.S. at 555. Her claim against the City similarly fails: respondeat superior cannot form the basis for municipal liability under § 1983. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Because Unger does not allege misconduct by the City itself or that a city policy or custom authorized Cooperrider's alleged misconduct, she fails to state a claim against the City. *Caudill v. Hollan*, 431 F.3d 900, 914–15 (6th Cir. 2005).

As to Cooperrider, Unger alleges that he violated her First Amendment rights in his individual capacity when he, acting as her supervisor, refused to reclassify and terminated her. But in order to state a prima facie case of First Amendment retaliation, Unger's complaint must plausibly allege that: (1) she engaged in speech or association addressing a matter of public concern, *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001); (2) her interest "as a citizen, in commenting upon matters of public concern" outweighed the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," *Pickering v. Bd. of. Educ.*, 391 U.S. 563, 568 (1968); and (3) her speech or association substantially motivated the employer's decision to take adverse employment action, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Because she does not sufficiently allege the first element—that her speech touched on a matter of public concern—Unger fails to state a claim against Cooperrider.

Unger contends that the union-related nature of her speech propels it into the realm of public

concern. True, where a government employer's actions result in substantial measure from hostility to union activities, the employee states a valid First Amendment claim. *Boals v. Gray*, 775 F.2d 686, 693 (6th Cir. 1985). But Unger fails to complain of anti-union animus. Thus, even if her speech ultimately relates to potential union membership, it must still touch on a matter of public concern to overcome the "wide latitude" we afford government officials in managing their employees "without intrusive oversight by the judiciary in the name of the First Amendment." *Connick v. Myers*, 461 U.S. 138, 146 (1983).

When an employee speaks "as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum" for reviewing the employer's behavior, *id*. at 147, "even if the reasons for the dismissal are alleged to be mistaken or unreasonable," *id*. at 146. To determine whether the speech touches on a matter of public concern, we review the "content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48. The public concern element may not be met by what the speaker might incidentally convey; "'passing' or 'fleeting' references to an arguably public matter do not elevate the speech to a matter of 'public concern'" where the speech advances only a private interest. *Farhat v. Jopke*, 370 F.3d 580, 592–93 (6th Cir. 2004) (internal citations omitted).

Unger argues that she spoke to gain "needed or appropriate" information "to enable the other members of society (fellow seasonal workers) to make informed decisions about the operation of their government in potentially depriving them of their rights as well." But even if we read her

complaint most generously and assume that Unger explicitly called for a general reclassification of all seasonal employees such that they could join the union, her claim still falls short because Unger's personal quest for reclassification motivated her speech. In *Connick*, the Supreme Court held that when Connick, an assistant prosecutor, upset over her pending transfer, circulated a questionnaire to fellow employees about "office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns," 461 U.S. at 138, only the political campaign-related speech rose to the level of public concern, *id*. at 141. Like in *Connick*, Unger's references to the inner workings of a government office, union-related or not, without implications for the political process or the public interest, fail to bring her speech within the ambit of public concern. Unger's complaint, thus lacking a prima-facie element of a First-Amendment-retaliation claim, fails to state a § 1983 claim against Cooperrider.

As the district court correctly held, Unger's failure to state a § 1983 claim renders moot her related punitive damages claim.

B. *Wrongful Termination in Violation of Public Policy Claim*

Unger also complains that the Defendants wrongfully terminated her in violation of public policy. In *Greeley v. Miami Valley Maint. Contractors., Inc.*, 49 Ohio St. 3d 228, 551 N.E.2d 981 (1990), the Ohio Supreme Court established that an employee holds a private cause of action

sounding in tort for wrongful discharge when her discharge contravenes a "sufficiently clear public policy." *Id*. at 233–34. To state such a claim, a plaintiff must plausibly allege that: (1) a clear public policy existed, manifested in a state or federal constitution, statute, or administrative regulation (clarity element); (2) dismissing employees under such circumstances would jeopardize the public policy (jeopardy element); (3) conduct related to the public policy motivated the dismissal (causation element); and (4) the employer lacked an overriding legitimate business justification (justification element). *Kulch v. Structural Fibers, Inc.*, 78 Ohio St. 3d 134, 677 N.E.2d 308, 321 (1997) (internal citation omitted). Unger contended that the defendants violated "a clear public policy as evidenced by the National Labor Relations Act, [Ohio's collective bargaining statute], and the First Amendment . . . ." Regarding the policy allegedly manifested in the National Labor Relations Act (NLRA), the district court correctly concluded that 29 U.S.C. § 152(2) expressly excludes public employees from the NLRA's protection, and thus Unger cannot claim that NLRA policy protects her speech or employment. With respect to both the First Amendment and the Ohio collective bargaining statute, Unger failed to sufficiently claim the first and third elements of the wrongful termination tort.

First, Unger's complaint fails to satisfy the clarity element. Because Defendants' allegedly adverse actions did not violate her free speech or association rights, the First Amendment cannot underlie Unger's clear public policy violation claim. Ohio's public employees' collective bargaining law expressly excludes seasonal employees. O.R.C. § 4117.01(C)(13). Even assuming Unger

successfully claimed that the defendants misclassified her and that the misclassification itself unfairly foreclosed the statute's protection, the law does not manifest a clear public policy against classifying employees who work full-time hours as seasonal employees.

Second, regarding the causation element, Unger's claim fails because she does not sufficiently allege that her policy-related conduct motivated her dismissal. She cites only temporal proximity—that "on or about August 8, 2007 a certified copy of the initial [state administrative unfair labor practice charges] was sent to the City, and a copy was faxed to the City's counsel;" and that "[u]pon receipt of the certified copy of the charge, the City announced that effective September 30, 2007, [she] would be laid off as a seasonal employee." But "[w]hile the timing of the termination can contribute to an inference of retaliation, temporal proximity alone is insufficient to support a finding of a causal connection." *Buehler v. AmPam Commercial Midwest*, No. C-060475, 2007 WL 2683520, at *5 (Ohio Ct. App. 1st Dist. Sept. 14, 2007) (footnote omitted); *see also Cunningham v. Steubenville Orthopedics & Sports Med., Inc.*, 888 N.E.2d 499, 511 (Ohio Ct. App. 2008); *accord Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) (holding that, as a matter of federal law, "temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim").

*C. Employment Contract Claims*

Unger alternatively claims that by terminating her, the defendants breached an oral contract

governing the terms of her employment. She ignores, however, longstanding Ohio law: a party cannot enforce an oral contract with a municipality. *See, e.g.*, *Cooney v. City of Independence*, No. 66509, 1994 WL 663453, at *2 (Ohio Ct. App. 8th Dist. Nov. 23, 1994) (citing *City of Wellston v. Morgan*, 65 Ohio St. 219, 62 N.E.2d 127 (1901); *Wolery v. City of Portsmouth*, 67 Ohio App. 3d 16, 585 N.E.2d 955, 957–58 (1990); *City of Seven Hills v. City of Cleveland*, 47 Ohio App. 3d 159, 547 N.E.2d 1024, 1026–29 (1988); *Cuyahoga Falls v. Ashcraft*, No. 15129, 1991 WL 284188 (Ohio Ct. App. 8th Dist. Dec. 26, 1991)). Indeed, "municipalities may not be bound to a contract unless the agreement is formally ratified through proper channels." *Cooney*, 1994 WL 663453, at *2. In Ohio, a valid ratification requires that the city director of law prepare a written contract. O.R.C. § 705.11. Unger therefore fails to allege the existence of a contract, let alone its breach.

## D. Equal Pay Act Claim

Unger's sex discrimination claim under the Equal Pay Act also fails. Her complaint cites nothing more than the claim's legal elements, neglecting to provide any factual basis in support. Thus, under Rule 12(b)(6), she failed to state a claim. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .").

## E. Additional State Law Claims

The district court declined to exercise supplemental jurisdiction over Unger's state law-based

sex discrimination claim. *See* 28 U.S.C. § 1367(c)(3). To reverse, we must find an abuse of discretion. *Carlsbad Tech., Inc.*, 129 S. Ct. at 1867. Because Unger advances no developed argument for such a finding in either her opening brief or in her reply, she forfeits this claim. *Humphrey v. United States Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (citing *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006); *Caudill*, 431 F.3d at 915 n.13). Furthermore, even if we chose to entertain the argument, no evidence of abuse of discretion exists.

### III. Conclusion

For these reasons, we affirm the district court's dismissal without prejudice of Unger's state-law based sex discrimination claim and its dismissal with prejudice of the remainder of her claims.