# THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ERIC HILLER,<br>    Plaintiff,<br><br>      v.<br><br>CITY OF REHOBOTH BEACH<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. NO. N21C-12-020 DJB |

## OPINION

### *Defendant's Motion to Dismiss - GRANTED*

Michele Allen, Esquire, Michele D. Allen, LLC., Attorney for Plaintiff

Daniel A. Griffith, Esquire, Whiteford, Taylor & Preston, LLP, Attorney for Defendant

**BRENNAN, J.**

On September 3, 2017, Plaintiff Eric Hiller (hereinafter "Hiller"), a then-police officer with the Rehoboth Beach Police Department (hereinafter "RBPD") and another officer transported a female defendant to Sussex Correctional Institute.[1] Upon arrival, the female defendant accused Hiller of "inappropriate behavior during the transport."[2] Following the misconduct allegations, RBPD launched an internal affairs investigation into Hiller.[3] Ultimately, Hiller's employment was terminated. As an employee-officer of the RBPD, Hiller was a member of the General Teamsters Local No. Union 326. The Teamsters Union negotiated and operated under a collective bargaining agreement (hereinafter "CBA") with the Defendant, City of Rehoboth Beach (hereinafter "the City"). The Article 7 of the collective bargaining agreement with RBPD and the General Teamsters Local No. Union 326, affiliated with The International Brotherhood of Teamsters, AFL-CIO (the "Union") governs RBPD's employee disciplinary procedures.[4]

Prior to instituting this suit, Hiller challenged his termination in multiple ways, including filing a Writ of Mandamus in this Court. Following the denial of that action, the instant suit was filed. Now, Defendant moves to dismiss Hiller's Complaint. For the reasons stated below, the Motion is **GRANTED.**

---

[1]      *Id.* ¶¶ 16-18.
[2]      *Id.* ¶ 18.
[3]      *Id.* ¶ 23.
[4]      Defendant Mot. to Dismiss, Ex. B (hereinafter "CBA") at 1, Mar. 25, 2022 (D.I. 5).

# I. PROCEDURAL HISTORY

All parties agree that the CBA is the controlling document to this dispute. Section 7.1 of the CBA provides that the City may discipline police officers "for just cause as established by substantial evidence."[5] Any disciplinary action should "be progressive in nature,"[6] unless the alleged conduct is "of an extreme nature."[7] In those extreme cases, the City may issue an emergency suspension.[8] Further, Section 7.2 incorporates and adopts Delaware's Law Enforcement Officer's Bill of Rights ("DELEOBOR").[9]

If a dispute arises under the CBA, Article 9 sets forth a three-step plan for resolution. First, if informal resolution discussions fail, either the employee or the Union must submit a written grievance to the chief of RBPD.[10] Following any such ruling, the Union may appeal the decision to the Defendant's City Manager.[11] If the Union remains unsatisfied with the City Manager's decision, the Union may submit the grievance to binding arbitration with the American Arbitration Association.[12]

---

[5] *Id.* § 7.1.
[6] *Id.* § 7.10.
[7] *Id.* § 7.12.
[8] *Id.*
[9] *Id.* §7.2.
[10] *Id.* § 9.3.1.
[11] *Id.*
[12] *Id.* § 9.6, 9.13.

Hiller initially claimed RBPD violated his rights under both DELEOBOR and multiple sections of the CBA throughout its investigation.[13] Hiller was initially charged with multiple violations of police procedure and policy on July 14, 2018.[14] Ultimately, the investigation continued and on March 12, 2019, RBPD issued its final investigative findings.[15] Three days later, the City, through RBPD, filed charges against Hiller, including violations of (1) Rule 800 Professional Standards Investigation; (2) Rule 400 Dishonesty; and (3) Rule 302 Rules of Conduct.[16] Pursuant to DELEOBOR, Hiller was entitled to a disciplinary hearing on the charges against him.[17] An impartial board of officers (hereinafter the "Trial Board")[18] held the hearing on April 29, 2019, and May 19, 2019.[19] The Trial Board issued its ruling on July 12, 2019, which sustained Hiller's Rule 800 charge, but dismissed the charges under Rule 400 and Rule 302.[20]

The Trial Board further found that RBPD committed multiple violations of DELEOBOR during its investigation of Hiller.[21] Nevertheless, the City terminated

---

[13] Am. Compl. ¶¶ 22-39.
[14] *Id.* ¶ 28.
[15] *Id.* ¶ 41.
[16] *Id.* ¶¶ 42, 45.
[17] *See* 11 *Del. C.* § 9203.
[18] The procedures for the hearing, including the selection of the board members, are set forth under 11 *Del. C.* § 9205.
[19] Am. Compl. ¶ 43.
[20] *Id.* ¶¶ 44-45.
[21] *Id.* ¶¶ 47-52.

Hiller's employment on July 17, 2019.[22] Hiller appealed his termination, which the City denied on September 20, 2019.[23] Following his appeal, Hiller alleges he grieved his termination following the procedures outlined in the CBA between the City and the Union.[24]

On October 17, 2019, Hiller filed a Writ of Mandamus in this Court (the "Mandamus Action") seeking to reverse the City's decision to affirm his termination and requesting reinstatement as an RBPD officer.[25] On September 18, 2020, this Court denied Hiller relief, ruling "…other remedies were available to Hiller; therefore, the Court declines to exercise the exceptional remedy of mandamus."[26] This Court, however, went on to address the merits of Hiller's case and determined that Hiller's violation of Rule 800 permitted termination as a possible punishment.[27] In addressing RBPD's DELEOBOR violations, the Court found the violations were "mere technical ones" which did not warrant mandamus relief.[28]

On December 2, 2021, Hiller filed the instant breach of contract action, claiming that the City violated multiple sections of the CBA.[29] In addition, Hiller

---

[22]   *Id.* ¶ 53.
[23]   *Id.* ¶¶ 55-57.
[24]   *Id.* ¶ 58.
[25]   *Id.* ¶ 59.  *See Hiller v. City of Rehoboth Beach*, 2020 WL 5637053 (Del. Super. Ct. Sept. 18, 2020).
[26]   *Hiller*, 2020 WL 5637053, at *3.
[27]   *Id.* at *4.
[28]   *Id.*
[29]   D.I. 1.

asserts RBPD also breached the implied covenant of good faith and fair dealing inhered in the CBA. After the City filed an initial motion to dismiss, the parties stipulated to the filing of an Amended Complaint.[30] Thereafter, the City renewed its motion and filed the pending Motion to Dismiss.[31] Following briefing, oral argument was held, at which time the Court requested additional briefing on any arguments under Article 9 of the CBA.[32] This is the Court's decision on the City's Motion to Dismiss the Amended Complaint.

## II. STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), the court must decide "whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[33] Under this Rule, the Court must:

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[34]

---

[30]   D.I. 9, 10.

[31]   D.I. 11.

[32]   D.I. 15.

[33]   *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. 2018) (quoting Superior Court Civil Rule 12(b)(6)).

[34]   *Id*. (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)) (citing *Prince v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166

"The Court, however, need not accept conclusory allegations unsupported by specific facts or … draw unreasonable inferences in favor of the non-moving party."[35]  "If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[36]

## III.  DISCUSSION

Defendant moves to dismiss the Amended Complaint on several grounds. First and foremost, it contends Hiller lacks standing to enforce the contractual obligations of the CBA.  Second, even should Hiller did have standing, the CBA's terms require disputes to be resolved via binding arbitration and thus prohibits a private right of action to this Court.  Third, it claims the doctrine of collateral estoppel bars this action.  Alternatively, should the Court find that Hiller sufficiently stated a claim for breach of contract, it contends that the implied covenant claim fails for the lack of standing and as duplicative of Hiller's breach of contract claim.

### A.  HILLER HAS FAILED TO PLEAD THAT HE IS A THIRD-PARTY BENEFICIARY TO THE CBA.

Defendant argues the Amended Complaint is devoid of factual allegations establishing Hiller as a third-party beneficiary to the CBA.  Rather, it contends that

---

[35]  *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at \*11 (Del. Super. Ct. Aug. 16, 2021) (citing *Prince v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), overruled on other grounds by *Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018)).

[36]  *Vinton*, 189 A.3d at 700 (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

the Amended Complaint sets forth bare legal conclusions. By contrast, Hiller maintains that he has pled sufficient facts to allege standing as third-party beneficiary to the CBA.

To have standing to sue for breach of contract, a plaintiff must be a party to the contract or an intended third-party beneficiary of the contract.[37] It is undisputed that Hiller is not a party to the CBA. Rather, Hiller maintains that he has standing as a third-party beneficiary. To qualify as a third-party beneficiary under Delaware jurisprudence:

> (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.[38]

Here, Hiller alleges that as an RBPD officer, he "was entitled" to the contractual protections of the CBA.[39] Hiller then pleads that he "is a third-party beneficiary of the [CBA]…and as such, has standing to bring suit."[40]

---

[37] *Ark. Teacher Ret. Sys. v. Alon USA Energy, Inc.*, 2019 WL 2714331, at *10 (Del. Ch. June 28, 2019) (citing *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007)).

[38] *Encore Preakness, Inc. v. Chestnut Health & Rehab. Grp., Inc.*, 2017 WL 5068753, at *4 (Del. Super. Ct. Nov. 1, 2017) (quoting *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268 (Del. Ch. Apr. 17, 2001)).

[39] Am. Compl. ¶¶ 8, 64.

[40] *Id.* ¶¶ 9, 65.

While it can clearly be said that the contracting parties intended officers to benefit from the CBA, Hiller cannot meet the remaining requirements. In so finding, *Meades v. Wilmington Housing Authority*,[41] is instructive. *Meades* addressed the issue of whether an aggrieved employee, who was not a signatory to a collective bargaining agreement, has standing to challenge an arbitration award obtained pursuant to that agreement. In a matter of first impression for Delaware, *Meades* held that in that case, there was nothing in the collective bargaining agreement that evidenced an intention to permit the employees themselves "to assert grievances individually, or to arbitrate or challenge the results of such proceeds on their own behalf."[42] The same is true here. The plain language of the CBA belies Hiller's claim that he can qualify as a third-party beneficiary.

As previously noted, Article 9 of the CBA sets forth a three-step plan for dispute resolution. It is undisputed that the CBA solely authorized the Union to take the second and third steps in the grievance process. The parties were given the opportunity post-argument to address *Meade*'s application to this case. However, Hiller's arguments cannot overcome the fact that the Amended Complaint offers no factual allegations to support the second and third elements of third-party beneficiary standing, nor can it possibly given the legal precedent set forth in *Meades*. As

---

[41]    2003 WL 939863 (Del. Chancery. Mar. 6, 2003).
[42]    *Meades*, 2003 WL 939863 at *3.

*Meades* noted, an aggrieved employee may have a cause of action against the Union for inaction, such as Hiller claims and has asserted in briefing, but he has no standing to individually enforce the CBA or bring suit for alleged violations of the CBA, to which he was not a party, nor a third-party beneficiary.[43]

## B. EVEN IF HILLER HAS STANDING, THIS COURT LACKS JURISDICTION OVER HILLER'S CLAIMS.

Hiller filed this breach of contract action on the grounds that the City violated multiple express and implied terms of the CBA.[44] The City contends that the CBA establishes a grievance procedure for the Union and the City to follow. Even assuming Hiller has standing under the CBA, which he does not, Hiller is bound by the procedure and has failed to abide by the CBA's terms. Specifically, Hiller never challenged his termination through a grievance, has not established that the Union breached a duty of fair representation and most importantly, the CBA's own terms require disputes under the agreement to be settled through binding arbitration.

Article 9 of the CBA delineates the grievance procedure the Union and the City agreed to. Section 9.2.1 defines a grievance as "any unresolved question or dispute concerning the interpretation and application of this, Agreement."[45] Here, Hiller alleges multiple disputes under the CBA. The Amended Complaint states that

---

[43]    *Id.*; *see also Jain v. State of Delaware, Department of Health and Social Services*, 2012 WL 2051754 (Del. Chancery June 5, 2012).
[44]    Am. Compl. ¶¶ 63-83.
[45]    CBA § 9.2.1.

the City breached Sections 7.1, 7.2, 7.5, 7.10, and 7.12 of the CBA.[46]  As a result, Hiller's claims are governed by the procedure set forth in Article 9 of the CBA. Under this step, either Hiller or the Union was required to file a written grievance to the RBPD Chief if informal discussions to resolve the dispute fail.[47]  In his Amended Complaint, Hiller pleads that he "grieved his termination in accordance with the grievance procedures set forth in the [CBA]."[48]  Hiller attached the purported grievance as an exhibit to his supplemental brief.[49]

The opening line of the professed grievance states, "I am writing this email to you *to serve as the informal discussion* as outlined in the [CBA], per Article 9.3.1."[50] Section 9.3.1 requires employees or the Union to file a written grievance after any informal discussions fail.[51]  Even if this document can constitute a grievance as defined by the CBA, the very terms of the CBA require the ultimate resolution through arbitration.  Therefore, the Superior Court lacks jurisdiction to hear this civil suit.[52]

---

[46]     Am. Compl. ¶¶ 66-76.
[47]     CBA § 9.3.1.
[48]     Am. Compl. ¶ 58.
[49]     Pl.'s Supplemental Br., Ex. 1, July 29, 2022 (D.I. 16).
[50]     *Id.*
[51]     CBA § 9.3.1.
[52]     *Coronado Coal II, LLC v. Blackhawk Land & Res. LLC*, 2022 WL 1772246, at *3 (Del. Super. Ct. May 31, 2022) ("Delaware courts lack subject matter jurisdiction to resolve disputes that litigants contractually agreed to arbitrate.").

Hiller, relying on multiple federal cases construing collective bargaining agreements under the National Labor Relations Act ("NLRA"), contends he is permitted to file a direct civil action against the City for breach of the CBA and that such an action can be maintained so long as (1) the employee attempted to exhaust all grievance procedures set forth under the collective bargaining agreement and (2) the employee's union breached its duty of fair representation to the employee.

As the CBA solely authorized the Union to take the second and third steps in the grievance process, but did not do so here. As a result, Hiller claims he is now entitled to bring a direct action against the City due to his attempt to grieve. The Amended Complaint is devoid of any allegations asserting misconduct on behalf of the Union, much less alleging a breach of duty of fair representation, therefore it fails to adequately plead this claim. Any amendment to the complaint, however, would be futile, as the NLRA has no application over public employers in this State.[53] Rather, the General Assembly has enacted the Public Employment Relations Act ("PERA")[54] to "promote harmonious and cooperative relationships between public employers and their employees" in Delaware.[55]

---

[53]   29 U.S.C. § 152(2) ("[t]he term 'employer' … shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof…"); *Unger v. City of Mentor*, 387 Fed.Appx. 589, 2010 WL 2842742, at *3 (6th Cir. July 21, 2010) (finding NLRA "expressly excludes public employees" from its protection).
[54]   19 *Del. C.* §§ 1301-19.
[55]   *Id.* § 1301.

The Union is an "employee organization" as defined under PERA.[56] PERA confers the Public Employment Relations Board ("PERB") with jurisdiction to hear disputes over unfair labor practices, including claims of breach of duty of fair representation.[57] Under Delaware law, "a party is required to exhaust all available administrative remedies before bringing a claim before the Superior Court."[58] As a result, even if Hiller had properly alleged a claim against the Union for breach of fair representation, that claim should have been brought before PERB first. Accordingly, to the extent Hiller attempts to allege an unfair representation claim, this Court remains without jurisdiction.

## IV. CONCLUSION

As a result of the above dispositive findings, to the extent the parties raised further arguments, there is no need to address those further. For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED**, this 9th day of March, 2023.

---

[56] *Id.* § 1302(i) ("'[e]mployee organization' means any organization which admits to membership employees of a public employer and which has as a purpose the representation of such employees in collective bargaining, and includes any person acting as an officer, representative, or agent of said organization.").

[57] *Id.* § 1308(a); *Kmetz v. Am. Ass'n of Univ. Professors*, 171 A.3d 1116, 2017 WL 4285128, at *2 (Del. Sept. 27, 2017) (TABLE) (holding PERB has jurisdiction to hear unfair representation claims under PERA).

[58] *Kmetz*, 2017 WL 4285128, at *2.